

**IT IS ORDERED as set forth below:**

**Date: May 23, 2019**

_____
**Paul Baisier
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In re: | ) Case No. 19-57651-pmb |
| HANNAH SOLAR, LLC | ) Chapter 11 |
| Debtor. | ) |

### AGREED INTERIM ORDER (A) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; (C) GRANTING RELATED RELIEF; AND (D) PROVIDING NOTICE OF CONTINUED HEARING ON MAY 29, 2019

Hannah Solar, LLC, debtor-in-possession in this Chapter 11 case ("Debtor") filed *Debtor's Motion for Authority to Use Cash Collateral on Interim and Continuing Basis and to Provide Adequate Protection* on May 17, 2019 (the "Motion"). The Motion seeks entry of an Interim Order

(the "Interim Order") authorizing, on an interim basis, use of "Cash Collateral" (as defined in Section 363(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, (the "Bankruptcy Code") and to provide adequate protection. The Motion came on for hearing on May 21, 2019 (the "Hearing"), after entry of an Order setting an expedited hearing. After consideration of the Motion, the Sworn Declaration of Peter Marte in support of the Motion, the full record in this case, and the arguments and evidence at the Hearing, the Court enters the makes the following findings and conclusions:

**FINDINGS OF FACT**

The Court makes the following interim findings of fact (the "Findings of Fact"):

A.  On May 15, 2019 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, Debtor has operated as a debtor-in-possession.

B.  Debtor obtained funding pre-petition from various lenders identified in the Motion, any of whom might seek to claim an interest in Cash Collateral (collectively, the "Lenders"). As set forth in Paragraph H below, Debtor stipulates that Synovus Bank ("Synovus") has an interest in Cash Collateral and is entitled to the adequate protection set forth herein.

C.  Orderly continuation of Debtor's business on an interim basis is dependent upon its ability to use the Cash Collateral, and Debtor is without sufficient means to continue operations without the use of the Cash Collateral. Thus, the relief granted in this Order is necessary, essential, and appropriate for the preservation of Debtor's business on an interim basis.

D.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), and (O), and venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E. The United States Trustee (the "UST") has not appointed a creditors' committee ("Committee") in these cases pursuant to section 1102 of the Bankruptcy Code.

F. Adequate notice of the Motion and hearing with respect thereto has been given, under the circumstances, pursuant to the Federal Rules of Bankruptcy Procedure 2002 & 9006(c).

G. Good and sufficient cause has been shown to justify the granting of the relief requested herein.

H. Debtor's Stipulations. The Debtor, hereby acknowledges, agrees, and stipulates as follows:

    a. As of the Petition Date, the Debtor was indebted and liable to Synovus for all of the obligations and indebtedness pursuant to, and in accordance with the terms of, the following loan documents[1]:

        i. The Amended and Restated Loan Agreement dated as of October 31, 2017, between Debtor and Synovus (the "Loan Agreement"),[2] with reference to that certain prior Loan Agreement dated as of December 18, 2014, pursuant to which Synovus extended (a) a term loan in the original principal amount of $500,000.00 and (b) a revolving facility in the original principal amount of $1,500,000.00;

        ii. The Amended and Restated Term Loan note dated as of October 31, 2017, in the original principal amount of $1,523,254.20, made by Borrower in favor of Synovus (the "Term Loan Note") and the Revolving Loan Note dated as of

---

[1] Debtor has also guaranteed the indebtedness of Coop Corner, LLC, its affiliate, to Synovus pursuant to that certain Guaranty Agreement dated as of December 18, 2014 (the "Coop Guaranty").

[2] The Loan Agreement is attached as Exhibit A to the Motion.

3

    October 31, 2017, in the original principal amount of $1,500,000.00 (the "Revolving Note," together with the Term Loan Note, the "Notes");

  iii. The Amended and Restated Security Agreement dated as of October 31, 2017, between Debtor and Synovus (the "Security Agreement"); and

  iv. The UCC-1 financing statements naming Hannah Solar, LLC as Debtor and Synovus as Secured Party filed 12/19/2014 and 12/29/2014 File Nos. 044-2014-005107 and 038-2014-012299 (the "Financing Statements," together with the Loan Agreement, Notes, Coop Guaranty, and Security Agreement, collectively, the "Loan Documents").

 b. As of the Petition Date, the Debtor owed Synovus the aggregate principal amount of approximately $1,424,457.84,[3] plus prepetition interest thereon and fees, expenses, charges, and other obligations incurred in connection therewith as provided in the Loan Documents (collectively, the "Prepetition Obligations").

 c. As of the Petition Date, all claims in respect of the Prepetition Obligations (i) constitute legal, valid, binding, and nonavoidable obligations of the Debtor and (ii) are not, and shall not be, subject to any avoidance, disallowance, disgorgement, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims,

---

[3] As of May 3, 2019, the outstanding indebtedness under the Coop Corner, LLC loan documents, which Debtor has guaranteed in the Coop Guaranty and which is secured by the Security Agreement was $613,484.67, exclusive of default interest, fees and expenses, including attorneys' fees. As of May 3, 2019, the outstanding indebtedness under the Loan Documents was $810,973.17, exclusive of default interest, fees and expenses, including attorneys' fees.

        cross-claims, defenses or any other challenges of any kind or nature under the Bankruptcy Code or any other applicable law or regulation.

d.    The Prepetition Obligations are secured by first priority liens on and security interests in (collectively, the "<u>First Priority Liens</u>") the "<u>Collateral</u>" as defined in and on the terms set forth in the Loan Documents (the "<u>First Lien Prepetition Collateral</u>"), granted to, or for the benefit of, Synovus.

e.    The First Priority Liens: (i) constitute valid, binding, enforceable, nonavoidable, and properly perfected first priority liens on the First Lien Prepetition Collateral that, before entry of this Interim Order, were senior in priority over any and all other liens on the First Lien Prepetition Collateral, subject only to those liens that were valid, enforceable, properly perfected, non-avoidable, and senior in priority to the First Priority Liens as of the Petition Date, if any (the "<u>Permitted Liens</u>"); (ii) shall not be subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, setoff, cross-claims, impairment, subordination, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation or other claim (as "claim" is defined by section 101(5) of the Bankruptcy Code); and (iii) are subject and subordinate only to the Permitted Liens, if any.

f.    The Debtor irrevocably waives any right to challenge or contest in any way the perfection, validity, or enforceability of the First Priority Liens or the allowance, validity, or enforceability of the Prepetition Obligations and the

5

Loan Documents. The Debtor stipulates that the Prepetition Obligations constitute allowable, secured claims against the Debtor's estates.

I.  Scope of the Synovus' Consent. The consent of Synovus granted herein is expressly limited to the Debtor's use of Cash Collateral solely on the terms and conditions set forth in this Interim Order and the Approved Budget. Nothing in this Interim Order, including, without limitation, any of the provisions regarding adequate protection, shall constitute or be deemed to constitute, a finding that Synovus is or will be adequately protected regarding any nonconsensual use of Cash Collateral. Synovus has acted in good faith and at arm's length in negotiating, consenting to, and agreeing to the use of Cash Collateral as set forth in this Interim Order.

NOW, THEREFORE, this Court ORDERS, ADJUDGES, AND DECREES, as follows:

1. Debtor is granted the limited use of Cash Collateral as follows:

(a) Subject to the terms and conditions of this Interim Order, Debtor is authorized to use Cash Collateral for the actual and necessary operations of the Debtor for the purposes and in the amounts set forth in the budget attached hereto as Exhibit "A" (or any other budget agreed to between the Debtor and Synovus and filed with the Court) (the "Approved Budget"), not to exceed a variance of ten percent (10%) within a month for all expenses as to disbursements for any single line item of more than $500 and a variance of twenty percent (20%) within a month for all expenses as to disbursements for any single line item of $500 or less.

(b) All Cash Collateral that Debtor receives shall be deposited in a bank account maintained pursuant to the U.S. Trustee's DIP account guidelines and requirements (the "Cash Collateral Account"), which may include a pre-petition account if so authorized by Order of the

6

Court. No funds shall be withdrawn by Debtor from the Cash Collateral Account except as expressly provided herein.

(c) Notwithstanding any term herein to the contrary, without the consent of Synovus, the Debtor shall not use Cash Collateral to pay (i) any expenses not expressly set forth in the Approved Budget, whether such items are similar to the expense categories in the Approved Budget; (ii) any obligations or debts arising before the Petition Date (unless otherwise ordered by the Court); or (iii) any fees or expenses of any party, including the Committee (if one is appointed), incurred in connection with the filing and prosecution of any challenge to the validity, amount, extent, perfection, priority or enforceability of Synovus' First Priority Liens, Loan Documents, or the Prepetition Obligations (the "Prohibited Expenses").

(d) Every month (beginning with the first full month after entry of this Interim Order), by the tenth business day of such month, the Debtor shall deliver to counsel to Synovus a monthly variance report from the previous month comparing the actual cash receipts and disbursements of the Debtor with the receipts and disbursements in the Approved Budget with respect to the applicable period (the "Budget Variance Report"). The Budget Variance Report shall include, among other things: (a) details regarding any restructuring costs paid, including amounts paid and specifying the names of the advisors receiving payment of any amounts; and (b) a comparison of each month's performance against the Approved Budget.

2. As a condition of Debtor's use of Cash Collateral, Synovus is granted the following Adequate Protection:

(a) As adequate protection for Cash Collateral expended by the Debtor in accordance with the Interim Order and as adequate protection for its interest in the First Lien Prepetition Collateral, Synovus is hereby granted, pursuant to section 361(1), 363(e),

7

and 552(b) a postpetition lien (the "Replacement Lien") in all assets and property of the Debtor, including, without limitation, Cash Collateral, the Cash Collateral Account, accounts, documents, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, commercial tort claims, cash equivalents, securities accounts, deposit accounts, commodity accounts, real estate, leasehold interests, contracts, patents, copyrights, trademarks, causes of action, and all other general intangibles, and all products and proceeds thereof, in each case to the same validity, extent, and priority of Synovus' prepetition First Priority Liens equal to the aggregate diminution in the value of First Lien Prepetition Collateral (whether such diminution is a result of, arises from, or is attributable to, the imposition of the automatic stay, use or disposition of Cash Collateral, or, consumption, use, shrinkage, disposition). The Replacement Lien shall be subject only to the Permitted Liens. The Replacement Lien shall attach to all Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor, and all proceeds, rents, or profits thereof, which were either subject to First Priority Liens or acquired because of Debtor's use and/or expenditure of Cash Collateral. The Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code. The Replacement Lien granted to Synovus by this Interim Order shall be perfected by operation of law upon execution and entry of this Interim Order by the Court. Synovus shall not be required to take any action to validate or perfect such Replacement Lien. Notwithstanding the foregoing, if Synovus chooses to file such documents, all such filings and recordations shall be deemed to have been filed or recorded as of the Petition Date.

(b) Subject to entry of a Final Order, no action, inaction, or acquiescence by Synovus shall be deemed to be or shall be considered as evidence of any alleged consent by Synovus to a charge against the Debtor's prepetition or postpetition collateral, pursuant to Bankruptcy Code sections 506(c) or 552(b).

3. Debtor shall at all times maintain insurance in the form and to the extent required under the Loan Documents and provide proof of said insurance to Synovus.

4. Upon reasonable advance written notice to Debtor and its legal counsel in the above-styled bankruptcy case, Synovus shall have access to, and the right to (i) examine and audit, Debtor's books and records and (ii) value or appraise any property that constitutes Synovus' collateral under the Loan Documents.

5. Any consent by Synovus to the use or continued use of Cash Collateral, including the interim relief granted herein, shall not be deemed to modify any of the terms or conditions of Synovus' Loan Documents.

6. In addition to the Budget Variance Report, the Debtor shall furnish to counsel for Synovus copies of its monthly Operating Reports, as required by the U.S. Trustee's Office, showing Debtor's revenues and expenses. All such reports may be submitted electronically.

7. Absent further Court order or unless Synovus otherwise consents in writing in its sole discretion, the Debtor's authority to use Cash Collateral pursuant to this Interim Order shall expire, without prior notice or order of the Court or any further action by Synovus, upon the earlier of: (i) confirmation of a plan of reorganization or liquidation; (ii) the conversion of this case to chapter 7 or dismissal of this case; (iii) the Debtor's use of Cash Collateral for any Prohibited Expenses; (iv) the appointment of a trustee or examiner in the case; (v) the Debtor's failure to comply with the Approved Budget (subject to permitted variances); (vi) upon the expiration of the

Approved Budget, unless a supplemental Approved Budget has been agreed upon by Synovus in its sole discretion; (vii) the Debtor's failure to comply with any provision of this Interim Order; (viii) the date of the consummation of a sale or other disposition of all or substantially all of the assets of the Debtor without Synovus' consent; (ix) an order shall be sought by the Debtor or entered granting any other claim superpriority status or a lien equal or superior to the Prepetition Liens, other than a request for an order authorizing a loan to pay the Prepetition Obligations in full or in an amount acceptable to Synovus in its sole discretion; or (x) the entry of any order reversing, staying, or amending this Interim Order or any motion or application brought by the Debtor seeking such relief without Synovus' consent. Nothing herein shall be construed as preventing the Debtor from filing a motion to amend or modify this Interim Order; however, such action will be considered an Event of Default under this paragraph, and if an Event of Default occurs because of Debtor's motion to amend or modify this Interim Order, the Debtor shall be authorized to use Synovus' Cash Collateral solely in accordance with the Approved Budget until further Order of this Court (the "Bridge Period"). For the avoidance of doubt, the Bridge Period shall only apply to an Event of Default arising solely because of Debtor's motion to amend or modify this Interim Order; the Bridge Period shall not affect or extend the Termination Date occurring because of any other Event of Default as defined in this Interim Order. Except as set forth below, the occurrence of any event in the preceding sentence shall be considered an event of default (the "Event of Default"). The Debtor shall have five business days from their receipt of e-mail notice of such Event of Default to Mr. Garrett Nail and Mike Robl (gnail@pgnlaw.com and michael@roblgroup.com), to cure an Event of Default only under (v) and (vii) in this Paragraph 4 (the "Cure Period"). For purposes of this Interim Order, an Event of Default shall be known as the "Termination Date." Upon the Termination Date, the Debtor's authority to use, spend, or otherwise

10

dispose of any further Cash Collateral, regardless of whether the Debtor has expended the entire amount set forth in the Approved Budget, shall automatically terminate, unless or until the Debtor obtain the written consent of Synovus or the Court enters an order after notice and a hearing.

8. Synovus shall have the full protection of section 363(m) of the Bankruptcy Code with respect to the debts, obligations, liens, and security interests created or authorized by this Interim Order in the event that this Interim Order or any other authority contained or created herein is vacated, reversed, or modified on appeal or otherwise by any court.

9. The Debtor's stipulations contained in Paragraph H shall be without prejudice to the right of any non-debtor party in interest (including a chapter 7 trustee) to contest same.

10. Synovus and Debtor are reserving whether interim adequate protection payments are required until a further hearing. Subject to the foregoing sentence, any post-petition payments made by Debtor to Synovus shall be applied to the indebtedness in accordance with the applicable Loan Documents and non-bankruptcy law, subject to reapplication or redirection of such funds in a manner directed by the Court in accordance with the Bankruptcy Code. The automatic stay of 11 U.S.C. § 362 is hereby lifted to the extent necessary to allow Synovus to effectuate the terms of this paragraph.

11. The Approved Budget includes provision for payment by Debtor of a "DIP finance fee," which Debtor expects to pay in conjunction with an application for debtor in possession financing. Debtor represented at the initial interim hearing on the Motion that Debtor had taken out numerous prepetition loans, as a result of which it considers costs associated with applications for credit facilities to be expenses incurred in the ordinary course of business, within the meaning of Section 363(c)(1) of the Bankruptcy Code, and not requiring approval of the Court as expenses outside the ordinary course of business. Debtor further represented that it has $95,000.00 of funds

11

on hand, which Debtor did not believe represented collateral or cash collateral of any lender or other creditor, from which the DIP finance fee may be paid. Inclusion of the "DIP finance fee" in the Approved Budget is authorized on that basis. Nothing contained herein shall be deemed a waiver of the right of Synovus or any other secured creditor to:

    a.    Consent or decline to consent to any extension of the use of Cash Collateral; or

    b.    Pursue any other right or remedy available to creditors under the Bankruptcy Code, including, without limitation, any rights on account of unauthorized uses of Cash Collateral.

12.    Additionally, the entry of this Order is without prejudice to the rights of Debtor and/or any secured creditor claiming rights in Cash Collateral in all respects, including, but not limited to, rights to (1) assert a failure of adequate protection, (2) contest the validity of pre-petition security interests and liens, (3) move for relief from the automatic stay, (4) seek extension, modification or alteration of the terms of this Interim Order, (5) propose and confirm a Plan of Reorganization inconsistent with the terms of this Interim Order, and/or (6) seek continued or additional use of Cash Collateral.

13.    The terms of this Interim Order shall not constitute evidence concerning issues of value of collateral or adequate protection in the event such issues are raised at a later date.

14.    Any consent by Synovus or any other Lenders to this Interim Order and receipt of payments shall not be deemed as a waiver or cure of any existing defaults of the Debtor under loan documents executed by the Debtor in favor of Synovus or any other secured Lenders or as a waiver of any acceleration any debt.

15. **NOTICE IS HEREBY GIVEN THAT A FURTHER INTERIM HEARING ON DEBTOR'S CONTINUED USE OF CASH COLLATERAL WILL BE HELD ON THE 29th DAY OF MAY 2019 AT 9:00 A.M. IN COURTROOM 1202, UNITED STATES COURTHOUSE, RICHARD RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE SW, ATLANTA, GEORGIA 30303 (the "Second Interim Hearing").**

16. Debtor's right to use cash collateral on an interim basis shall terminate at the conclusion of the Second Interim Hearing, if not extended at the hearing provided for in the immediately preceding paragraph.

17. Notwithstanding Bankruptcy Rule 4001(a)(1), this Order is not stayed and shall be effective upon the date of its entry on the docket.

18. Debtor shall serve a copy of this Order by first-class mail within three (3) business days from the date of entry upon those entities requesting notice or required to be served under Bankruptcy Rule 4001(d) and all parties in interest in this Bankruptcy Case and certify service to the Court.

**[END OF ORDER]**

**PREPARED AND SUBMITTED BY:**

/s/ Garrett A. Nail
Garrett A. Nail
Georgia Bar No. 997924
PORTNOY GARNER & NAIL LLC
3350 Riverwood Parkway
Suite 460
Atlanta, Georgia 30339
(678) 385-9712
gnail@pgnlaw.com
*Proposed co-counsel for Debtor*

/s/ Michael D. Robl
Michael D. Robl
Georgia Bar No. 610905
ROBL LAW GROUP LLC
3754 Lavista Road
Suite 250
Tucker, Georgia 30084
(404) 373-5153 (telephone)
(404) 537-1761 (facsimile)
michael@roblgroup.com (e-mail)
*Proposed co-counsel for Debtor*