UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>Hannah Solar, LLC,<br><br><br>Debtor. | CHAPTER 11<br><br>Case No. 19-57651-PMB<br><br><br>JUDGE BAISIER |

### NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Debtor has filed a *Consent Motion to Approve Joint Check Procedures and Cady Bag Minor Work Agreement* and related papers (collectively, the "Motion") with the Court seeking entry of an order authorizing the Debtor to enter into and perform under the Cady Bag Minor Work Agreement and Joint Payment Agreements (both as defined in the Motion).

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303 at **2:00 PM on July 15, 2019**.

**PLEASE TAKE FURTHER NOTICE** that your rights may be affected by the Court's ruling on this Motion. You should read this Motion carefully an discuss it with your attorney, if you have one in this bankruptcy case. (If you do not have any attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in the Motion or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the Motion with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response to that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is:

Clerk, U.S. Bankruptcy Court
Suite 1340
75 Ted Turner Drive
Atlanta, GA 30303

You must also mail a copy of your response to the undersigned at the address stated below.

- 2 -

Dated: June 24, 2019.

By: /s/ *Garrett A. Nail*
Garrett A. Nail
GA Bar No. 997924
**PORTNOY GARNER &
NAIL LLC**
3350 Riverwood Parkway
Suite 460
Atlanta, GA 30339
Telephone: 678.385.9712

*Co-Counsel for the Debtor*

By: /s/ *Michael D. Robl*
Michael D. Robl
GA Bar No. 610905
**ROBL LAW GROUP LLC**
3754 Lavista Road
Suite 250
Tucker, GA 30084
Telephone: 404.373.5153
Facsimile: 404.537.1761

*Co-Counsel for the Debtor*

- 2 -

39248468

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

Hannah Solar, LLC,

Debtor.

CHAPTER 11

Case No. 19-57651-PMB

JUDGE BAISIER

**CONSENT MOTION TO APPROVE JOINT CHECK AGREEMENTS AND CADY BAG MINOR WORK AGREEMENT**

COMES NOW the above-captioned debtor and debtor-in-possession (the "Debtor") and, with the support and consent of its creditors REC Commercial Solar Corporation ("REC") and Southbound Solar, LLC ("Southbound" and, together with REC, the "Counterparties"; and collectively with the Debtor, the "Movants"), by and through their respective undersigned attorneys, and hereby files this Consent Motion to Approve Joint Check Agreements and Cady Bag Minor Work Agreement (the "Motion").  In support hereof, the Movants respectfully represent as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(M).  Venue in this district is proper pursuant to 28 U.S.C. § 1408.

2. The statutory predicates for the relief sought herein are Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

3. On May 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

4. The Debtor continues to manage and operate its business as a debtor-in-possession under Section 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed.

5. The Debtor was, and is, in the business of, among other things, designing, constructing, and installing solar power projects for both commercial and residential customers. *See* [D.E. 9-2] (the "Marte Declaration") at ¶ 3.

6. Prior to the Petition Date, the Debtor and the Counterparties entered into two, interrelated agreements:

(a) That certain *Asset Purchase Agreement* dated as of June 29, 2018 by and between Southbound, as purchaser, and the Debtor and certain of its affiliates, as sellers (the "APA"); and

(b) That certain *Master Engineering, Procurement, and Construction Agreement* dated as of June 29, 2018 by and between REC and the Debtor (the "EPC Agreement" and, together with the APA, the "Solar Agreements").[1]

7. Together, the Solar Agreements contemplated that the Debtor would construct and then sell to Southbound certain solar photovoltaic projects located within the state of Georgia. Specifically, the EPC Agreement provided that the Debtor would design, develop, construct, and

---

[1] The Solar Agreements have been omitted due to confidentiality concerns; however, the Movants will make available the Solar Agreements to the Court for an *in camera* review if so requested.

- 2 -

install two (2)[2] solar photovoltaic projects, named Cady Bag ("Cady Bag") and McClesky Cotton ("McClesky" and, together with Cady Bag, each a "Solar Project" and collectively, the "Solar Projects"). *See* EPC Agreement at § B. The APA then facilitated the transfer to Southbound of the completed and installed Solar Projects. *See* APA at § 2.02.

8. Among other things, the EPC Agreement permitted the Debtor's use of subcontractors to "undertake all or any portion" of the construction and installation required to complete the Solar Projects. EPC Agreement § 2.14. Accordingly, the EPC Agreement contained a number of safeguards, including:

(a) *Lien Removal*. In the event a subcontractor filed a lien on any of the Solar Projects, the Debtor had an affirmative duty to "bond over or otherwise remove such [l]ien." *Id.* at § 2.13;

(b) *Joint Check Provision*. If REC had a "reasonable belief" that the Debtor failed or likely would fail to timely pay any subcontractor, supplier, or vendor, REC was entitled to make "any payment otherwise due [to the Debtor] . . . by joint check" pursuant to "a joint check agreement in a form required by REC" (the "Joint Check Clause"). *Id.* at § 3.5;

(c) *Indemnity*. The Debtor was required to indemnify REC for losses that, among other things, arose out of the Debtor's "breach in any material respect of any of the representations, warranties, covenants, or agreements" in the EPC Agreement. *Id.* at § 7.1; and

(d) *Termination*. Upon the occurrence of an "Event of Default" (defined to include, among other things, the failure to timely meet payment obligations), the non-defaulting party was permitted to terminate the EPC Agreement, with most obligations surviving the termination. *Id.* at §§ 9.2, 9.3, 9.4.

---

[2] The Solar Agreements actually contemplated the construction and sale of three projects; however, one was cancelled for reasons not relevant here.

- 3 -

9. In exchange for the Debtor's development and construction pursuant to the EPC Agreement, REC agreed to pay to the Debtor a certain contract price for each of the Solar Projects (as used and defined in the EPC Agreement, the "Contract Price"), due and payable in installments after the Debtor's achievement of various Milestones (as defined in the EPC Agreement) for each Solar Project. *Id.* at § 2.1. REC is entitled to reduce or offset any Contract Price to the extent REC used the Joint Check Clause to pay subcontractors, vendors, or suppliers. *Id.* at § 3.5.

10. After execution of the Solar Agreements, the Debtor began work on the Solar Projects, making substantial progress. Approximately one month before the Petition Date, however, REC became aware that the Debtor had not paid a significant number of subcontractors, vendors, and/or suppliers.

11. Accordingly, on April 9, 2019, REC issued to the Debtor a notice of default, stating the names of the unpaid parties and the amounts owed thereto. The Debtor was unable to cure the default, so REC terminated the EPC Agreement on April 24, 2019. Since terminating the EPC Agreement, on May 2, 2019, REC and the Debtor entered into that certain *Minor Work Subcontract Agreement* to complete the McClesky Solar Project (the "McClesky Minor Work Agreement") that includes provisions authorizing the use and offset of joint checks.

12. Post-termination, REC (with the Debtor's consent and support) issued a number of joint checks to the Debtor and its subcontractors and/or suppliers pursuant to the form joint payment agreements referenced in the Joint Check Clause and the McClesky Minor Work Agreement. Due to the continued and anticipated cooperation among REC and the Debtor, the Solar Projects are nearing completion.

39248468

**RELIEF REQUESTED**

13.     Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Movants seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"):

(a)     authorizing the Debtor and REC to enter into and perform under both –

(i)     a Minor Work Subcontract Agreement with respect to Cady Bag (the "Cady Bag Minor Work Agreement"), substantially similar to the draft/form attached hereto as **Exhibit B**, pursuant to which the Debtor will complete certain outstanding work on Cady Bag, and

(ii)    joint payment agreements (each, a "Joint Payment Agreement"), substantially similar to the form attached hereto as **Exhibit C**, pursuant to which REC will issue joint checks to the Debtor and any subcontractor, supplier, or vendor performing work on the Solar Projects until the completion of the Solar Projects; and

(b)     to the extent applicable, waiving the 14-day stay under Bankruptcy Rule 6004(h).[3]

**BASIS FOR RELIEF**

**I.     THE CADY BAG MINOR WORK AGREEMENT AND JOINT PAYMENT AGREEMENTS ARE ORDINARY COURSE TRANSACTIONS.**

14.     The Debtor's entry into and performance under the Cady Bag Minor Work Agreement and the Joint Payment Agreements should be approved as "ordinary course" transactions within the meaning of Bankruptcy Code Section 363(c)(1).  Pursuant to Section 363(c)(1) of the Bankruptcy Code, a debtor-in-possession may enter into a transaction "in the ordinary course of business, without notice or a hearing, and may use property of the estate in the

---

[3] Movants do not intend for this Motion to constitute any assumption of any of the Solar Agreements.  The Debtor reserves its rights with regard to the Solar Agreements, including its rights under 11 U.S.C. § 365.

- 5 -

39248468

ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). "The term 'ordinary course' has generally been interpreted 'to embrace the reasonable expectations of interested parties of the nature of the transactions that the debtor would likely enter in the course of its normal, daily business.'" *In re Atlanta Retail*, 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002) (quoting *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997)). A key touchstone for determining ordinariness is the "prior practices of the company itself." *In re D'Lites of Am., Inc.*, 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989). Thus, the post-petition continuance of a pre-petition action – particularly a recurring one – almost certainly is ordinary course. *Cf. id. See also, e.g.*, *Rissell v. Kapila*, No. 18-cv-61927-BLOOM, 2018 U.S. Dist. LEXIS 181589, at *5 (S.D. Fla. Oct. 22, 2018) ("Debtor's business is leasing real property . . . Thus, it appears even though [the parties] sought the Court's approval of the lease, it may not have been required.") (citing 11 U.S.C. § 363(c)(1).

15. Here, the Cady Bag Minor Work Agreement and Joint Payment Agreements are well-within the ordinary course of the Debtor's business. As set forth in the Marte Declaration, the Debtor is in the business of constructing and installing solar projects. *See* Marte Declaration at ¶ 3. Thus, the Cady Bag Minor Work Agreement and Joint Payment Agreements – both of which will permit the completion of the Solar Projects – undoubtedly are "transactions that the [D]ebtor would likely enter in the course of its normal, daily business." *Atlanta Retail*, 287 B.R. at 856 (internal citations and quotations omitted).

16. Moreover, both the Cady Bag Minor Work Agreement and the Joint Payment Agreements are substantially similar to (if not the same as) transactions the Debtor entered into prepetition. The Cady Bag Minor Work Agreement is similar in form and scope to the McClesky Minor Work Agreement, which the Debtor entered into after termination of the EPC Agreement.

The Joint Payment Agreement is the same as those which the Debtor and REC entered into on a rolling basis after termination of the EPC Agreement. The McClesky Minor Work Agreement and the prepetition Joint Payment Agreements collectively ensured that the Debtor's suppliers or subcontractors providing necessary labor or materials on-site at McClesky received payment – consistent with the Debtor's continuing rights and obligations under the EPC Agreement and McClesky Minor Work Agreement. The Movants simply seek to continue this practice post-petition so that the Solar Projects can be completed. This type of post-petition continuation of a prepetition transaction is the hallmark of an ordinary course transaction. *See, e.g.*, *D'Lites*, 108 B.R. at 355. Accordingly, the Movants respectfully submit that the Debtor may enter into and perform under the Cady Bag Minor Work Agreement and post-petition Joint Payment Agreements (with respect to both Cady Bag and McClesky) in the ordinary course of its business, without notice or a hearing.

17. In an abundance of caution, however, and to the extent that entering into the Cady Bag Minor Work Agreement and/or post-petition Joint Payment Agreements is deemed to be outside of the ordinary course of the Debtor's business, the Debtor (with the Counterparties' support and consent) seeks Court authority to enter into and perform under the Cady Bag Minor Work Agreement and the Joint Payment Agreements pursuant to Section 363(b) of the Bankruptcy Code.

## II. ALTERNATIVELY, USE OF THE JOINT PAYMENT AGREEMENTS IS WITHIN THE SOUND BUSINESS JUDGMENT OF THE DEBTOR AND SHOULD BE APPROVED.

18. Bankruptcy Code Section 363(b)(1) provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy Code does not set forth the relevant standard to determine the propriety of a proposed transaction; however,

"the vast majority of courts" have adopted the "business judgment test." *In re Diplomat Constr., Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012) (citing *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983)). Under this standard, the Debtor must show "some articulated business justification" for a transaction outside of the ordinary course. *Lionel*, 722 F.2d at 1070.

19. Here, there are at least two compelling "business justification[s]," *id.*, that support the Movants' use of the Cady Bag Minor Work Agreement and the Joint Payment Agreements. *First*, and perhaps most importantly, the Cady Bag Minor Work Agreement and the Joint Payment Agreements will enable the completion of the Solar Projects. Upon completion of the Solar Projects, the Debtor may be entitled to the Contract Price (as defined in the EPC Agreement) for each Solar Project, net of the payments made under the Joint Payment Agreements. In other words, the Cady Bag Minor Work Agreement and the Joint Payment Agreements could result in revenue to the Debtor – in clear aid to the reorganization effort. Likewise, the Debtor's demonstrated ability to keep commitments and complete construction projects will be instrumental in its bid to rebuild its brand, reorganize successfully, and exit chapter 11 as a viable business.

20. *Second*, the Cady Bag Minor Work Agreement and the Joint Payment Agreements will minimize REC's claims against the Debtor. Under the indemnification provisions of the EPC Agreement (which survived termination), the Debtor is obligated to indemnify REC for, among other things, the costs to remove any liens filed against the Solar Projects. *See* EPC Agreement at §§ 2.14(d) ("[Debtor] shall . . . ensure that the Project and Site remain free of any Liens arising through [Debtor] or any of its Subcontractors."); 7.1 ("[Debtor] agrees to indemnify, defend and hold harmless [REC] from and against any and all Losses incurred by [REC] in connection with or arising out of p[ any . . . breach in any material respect of any . . . covenants or agreements made by [Debtor] in this Agreement."). Thus, ensuring that the on-site subcontractors and suppliers get

- 8 -
39248468

paid – and the Solar Projects remain lien-free – inures directly to the benefit of the Debtor and its constituents.[4]

21. In sum, entry into and performance under the Cady Bag Minor Work Agreement and the Joint Payment Agreements plainly is in the best interests of the Debtor and its estate. Not only will the Cady Bag Minor Work Agreement and the Joint Payment Agreements help the Debtor rebuild its base and brand, but they will also reduce potential claims. Even better, the Cady Bag Minor Work Agreement and the Joint Payment Agreements could result in funds for the Debtor's ongoing operations. Accordingly, the Debtor has demonstrated a clear business justification for the Cady Bag Work Agreement and the Joint Payment Agreements, and the Motion should be granted.

22. In addition, the Movants respectfully request that the Court waive the stay under Bankruptcy Rule 6004(h), which provides that an order "authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).

## CONCLUSION

WHEREFORE, the Movants respectfully request that the Court: (i) enter the Order (a) authorizing but not directing the Debtor to enter into and authorizing but not directing the Debtor to perform under the Cady Bag Minor Work Agreement and the Joint Payment Agreements until the completion of the Solar Projects, and (b) waiving the stay pursuant to Bankruptcy Rule 6004(h); and (ii) grant such other and further relief as is right and proper under the circumstances.

Dated:      June 24, 2019.

---

[4] This is particularly true if the Debtor's non-payment results in a post-petition lien, as the removal cost may be classified as an expense entitled to administrative priority. *Cf. WM Inland Adjacent LLC v. Mervyn's LLC (In re Mervyn's Holdings, LLC)*, Nos. 08-11586 (KG), 09-50920 (KG), 2013 Bankr. LEXIS 67 (Bankr. D. Del. Jan. 8, 2013) (holding that a post-petition indemnification claim arising from the removal of a mechanic's lien was entitled to administrative priority).

<table>
<tr><td>By: /s/ <i>Matthew Roberts</i><br>Matthew G. Roberts<br>GA Bar No. 367914<br><b>TROUTMAN SANDERS LLP</b><br>Bank of America Plaza<br>600 Peachtree Street NE<br>Suite 3000<br>Atlanta, GA 30308-2216<br>Telephone: 404.885.3000<br>Facsimile: 404.885.3900<br><br><i>-and-</i><br><br>Brett D. Goodman (<i>pro hac vice</i> to be filed)<br><b>TROUTMAN SANDERS LLP</b><br>875 Third Avenue<br>New York, NY 10022<br>Telephone: 212.704.6000<br>Facsimile: 212.704.6288<br><br><i>Attorneys for Creditors REC Commercial Solar Corporation and Southbound Solar, LLC</i></td><td>By: /s/ <i>Garrett A. Nail</i><br>Garrett A. Nail<br>GA Bar No. 997924<br><b>PORTNOY GARNER & NAIL LLC</b><br>3350 Riverwood Parkway<br>Suite 460<br>Atlanta, GA 30339<br>Telephone: 678.385.9712<br><br><i>Co-Counsel for the Debtor</i></td><td>By: /s/ <i>Michael Robl</i><br>Michael D. Robl<br>GA Bar No. 610905<br><b>ROBL LAW GROUP LLC</b><br>3754 Lavista Road<br>Suite 250<br>Tucker, GA 30084<br>Telephone: 404.373.5153<br>Facsimile: 404.537.1761<br><br><i>Co-Counsel for the Debtor</i></td></tr>
</table>

- 10 -

39248468